IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

KELMIT OQUENDO-RIVERA,

    **Plaintiff,**

        **v.**                    **CIVIL NO.** 09-1154 (FAB)

PEDRO TOLEDO, *et al.*,

    **Defendants.**

**OPINION AND ORDER**

BESOSA, District Judge

On December 30, 2009, plaintiff Kelmit Oquendo-Rivera ("Oquendo") filed an amended complaint (Docket No. 33) alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 ("section 1983") by members of the Puerto Rico Police Department ("PRPD"). The Amended Complaint names six members of the PRPD as defendants, three of whom are also sued in their capacity as supervisors for supervisory liability under section 1983. On July 8, 2010, five of those defendants - Eddie[1] Rivera-Nazario ("Rivera"), Jose Bracero-Sepulveda ("Bracero"), David Colon ("Colon"), Rashid Feliciano ("Feliciano"), and Antonio Rodriguez ("Rodriguez") - filed a motion for summary judgment

_____

[1] The Docket in this case contains the first name Eddie, however, elsewhere in the record, that first name is listed as Erick. To avoid confusion, the Court refers to him simply as Rivera as indicated in the parenthetical above.

Civil No. 09-1154 (FAB)                                                2

(Docket No. 58).  Oquendo opposed the motion on July 29, 2010,

(Docket No. 68), to which the movants replied on August 6, 2010

(Docket No. 73).  The Court **GRANTS IN PART and DENIES IN PART** the

moving defendants' motion.

**FACTUAL BACKGROUND**

**I.   Local Rule 56**

Local Rule 56(c) requires a non-moving party to file with its

opposition "a separate, short, and concise statement of material

facts" which shall "admit, deny or qualify the facts by reference

to each numbered paragraph of the moving party's statement of

material facts and unless a fact is admitted, shall support each

denial or qualification by a record citation as required by this

rule."  Local Rule 56(c) also requires that, if the nonmoving party

includes any additional facts, such facts must be in a separate

section, set forth in separate numbered paragraphs, and be

supported by a record citation.  As a general principle, parties

may not include legal arguments or conclusions in their statement

of facts.  See MVM Inc. v. Rodriquez, 568 F.Supp.2d 158, 163

(D.P.R. 2008); Juarbe-Velez v. Soto-Santiago, 558 F.Supp.2d 187,

192 (D.P.R. 2008).

The First Circuit Court of Appeals has "repeatedly . . .

emphasized the importance of local rules similar to Local Rule 56

[of the District of Puerto Rico]." <u>Caban Hernandez v. Phillip</u> <u>Morris USA, Inc.</u>, 486 F.3d 1, 7 (1st Cir. 2007). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is – and what is not – genuinely controverted.'" <u>Id</u>. (quoting <u>Calvi v. Knox County</u>, 470 F.3d 422, 427 (1st Cir. 2006)). Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." <u>Id</u>. Where a party does not act in compliance with Local Rule 56, "a district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." <u>Id</u>. (citing <u>Cosme-Rosado v. Serrano-Rodriguez</u>, 360 F.3d 42, 45 (1st Cir. 2004)).

Both the plaintiff and the defendants, but most egregiously the plaintiff, have failed to comply with Rule 56. Certain statements of fact or responses to the opposing party's statements of fact do not refer consistently to record citation as required by Local Rule 56; many of plaintiff's responses consist of lengthy paragraphs, which are repeated verbatim as a sort-of boilerplate response to numerous alleged facts, containing mixtures of argument, opinion, and conclusion. Counsel for both parties should note that their statements of fact often confuse facts with

conclusory statements, opinions and arguments and as such are not appropriate under Local Rule 56.

As for admissibility issues, the Court includes in the factual background of this opinion only facts that are relevant, properly supported, and admissible (which means no hearsay will be admitted) for the purposes of its review at this stage of the proceedings.

## II.  Uncontested Facts[2]

Defendant Bracero testified[3] that at about 7:30 a.m. on February 21, 2008, he and fellow police officer David Colon began conducting surveillance on "number 22," a residence which was the object of a search warrant in the "El Cerro" sector in the town of Yauco.  (Docket No. 59-2 at 2-3.)  Bracero recalled observing several people arriving in the targeted residence sometime after midday, among whom was the plaintiff, Oquendo.  Id. at 3.  The agents decided to enter the residence at 2:00 p.m.  Id.  Defendant

---

[2]  This case centers upon the events leading up to and resulting in the shooting of the plaintiff.  The parties present different versions of those events.  Nevertheless, the Court draws from the exhibits offered by the parties to support their alleged fact - mainly the testimonies given by various individuals. Although the Court cannot weigh the credibility of the testimonies to determine what actually happened on February 21, 2008, it can recount those testimonies because the fact that these testimonies were given is not contested.

[3]  Bracero testified about these events during a revocation hearing in criminal case 00-033, Docket Number 101.

Feliciano arrived in a second car to assist with the execution of the search warrant in the targeted residence. Id. at 9. About ten to fifteen police officers were involved in the operation. Id. at 6. What happened next is contested among the parties. Both sides agree that shooting occurred, but they disagree on who engaged in the shooting and at whom the shooting was targeted.

According to the testimony of defendants Bracero, Rivera, and Colon, a shoot-out occurred between the people under surveillance who were going in and out of the house and the agents on the scene. Id. at 4. Bracero testified that when the shooting began he searched for cover behind the vehicle parked across the street from the residence and he maintains that he did not shoot his regulations weapon or any other weapon during the incident. (Id.; Docket No. 59-3.) Under penalty of perjury, Bracero stated that his regulations weapon at that time was never investigated following the incident because he did not fire it that day. (Docket No. 59-3.) Defendants Rivera and Colon also stated under penalty of perjury that they did not fire any weapons on February 21, 2008, and that their regulations weapons were not investigated because they were not fired that day. (Docket Nos. 59-4; 59-5.) Bracero testified that he entered the house after the shooting ceased and found five of the seven individuals

he had seen going into the house there, all of whom were then arrested.  (Docket No. 59-2 at 4-5.)

According to defendant Feliciano, when Feliciano stepped out of the car and proceeded up the stairs in front of the targeted residence, he heard a shot from his right.  (Docket No. 59-2 at 9.) Feliciano claimed during his testimony that he heard another shot coming from a window.[4]  Id.  Feliciano explained that a person "came out of the window" then, after jumping on a "small edge protruding from the house," "ran toward the left while aiming and shooting his gun towards [Feliciano]".  Id.  Feliciano then aimed and shot at that individual.  (Id. at 10; Docket No. 69 at 7.) Feliciano testified that, after the bullet hit Oquendo's leg, Oquendo continued running away and jumped over a fence.  (Docket No. 69-4 at 2.)  Feliciano stated that he continued hearing shots "all around" him and that he "threw" himself on the ground for cover.  (Docket No. 59-2 at 10.)  Feliciano also testified that Oquendo shot at him with a revolver with his (Oquendo's) left

---

[4] In his testimony, Feliciano did not specify where the "window" was located, whether it was a window in the targeted house, or a window in a neighboring building or car.

hand.[5]  Id. at 12.  Feliciano stated that he did not see Oquendo on

the premises prior to hearing the first shot.  Id. at 14.

Oquendo's version of the story varies in a few significant

places.  According to Oquendo's testimony, Oquendo saw three

individuals in civilian clothes running with weapons in their hands

toward the targeted house.  (Docket No. 69-1 at 2.)  Oquendo

explained that when he saw the three individuals, he ran to the

rear of the house because he did not know who they were and because

they had started to fire shots at him.  Id.  Oquendo testified

that, as he was fired upon, he ran to the rear of the house, taking

cover behind the back part of the house, then jumped the fence of

"the other house" as shots continued to be fired at him.  Id. at 3.

He further explained that "as [he] fell on the other house, and [he

was] going to hide behind the other house, that's when [he]

received a bullet impact on [his] leg, [his] left leg."  Id.

According to Oquendo, he fell behind the house and then, when he

could not stand up, and his leg "was sort of like dangling there,"

_____

        [5] It strikes the Court as odd that Oquendo argues he is right-
handed without reference to any admissible evidence, not even an
affidavit.  The only evidence submitted regarding the fact that
Oquendo is right-handed is an opinion from the First Circuit Court
of Appeals in a related criminal case, which is not admissible
here.

Civil No. 09-1154 (FAB)                                                    8

he crawled to the other edge of the house and stayed there until an officer appeared.  Id.

Both parties agree that Feliciano shot Oquendo in Oquendo's left leg, where Oquendo received a bullet impact. (Docket No. 59-2 at 10; Docket No. 69 at 8.)  Both parties also agree that the alleged weapon was not found, and that, after ambulances arrived, Oquendo was arrested by another officer, Hector Castillo. (Id. at 10-11, 12; Docket No. 69 at 8, 10.)

## LEGAL STANDARDS AND ANALYSIS

### I.   Summary Judgment Standard

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  The Rule states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c); see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52. (1st Cir. 2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Civil No. 09-1154 (FAB)                                                        9

Once a properly supported motion has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment.  For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.  See Suarez v. Pueblo Int'l., Inc., 229 F.3d 49, 53 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine."  Material means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is genuine when a reasonable jury could return a verdict for the nonmoving party based on the evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment.  Id. at 252.  It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## II.  42 U.S.C. § 1983

"Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right." Omni Behavioral Health v. Miller, 285 F.3d 646, 650-51 (8th Cir. 2002); see also Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 621 (1st Cir. 2000). It is well settled that in order for a claim to be cognizable under section 1983, a plaintiff must plead and prove three elements: (1) that the defendants acted under color of state law; (2) that the plaintiffs were deprived of federally protected rights, privileges, or immunities; and (3) that the defendants' alleged conduct was causally connected to the plaintiff's deprivation. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989). Hence, to succeed in a section 1983 action, plaintiffs must prove that defendants' actions were a cause in fact or a proximate

cause of their injury.   See Collins v. City Harker Heights, 503 U.S. 115 (1992).

**A.   Excessive Force**

The plaintiff alleges that his rights pursuant to the Fourth, Fifth and Fourteenth Amendments were violated when police officers used excessive force during an altercation in which he was involved.   (Docket No. 33 at 4-5.)   The Supreme Court has held that "because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically-intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."   Graham v. Conner, 490 U.S. 386, 395 (1989).   Following the Supreme Court's holding in Graham, the First Circuit Court of Appeals has rejected alleged deprivations of substantive due process rights under the Fourteenth Amendment based either on excessive force or on malicious prosecution.   Estate of Bennett v. Wainwright, 548 F.3d 155 (1st Cir. 2008) (dismissing a substantive due process claim for deprivation of a life interest because the claim was based on excessive force more appropriately brought under the Fourth Amendment); Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 51-53 (1st Cir. 2005) (holding that an excessive force claim is governed by the Fourth Amendment's

"objectively reasonable" standard rather than the Fourteenth Amendment's "shock the conscience" standard); Roche v. John Hancock Mutual Life Ins., 81 F.3d 249, 256 (1st Cir. 1996) (holding that "[t]here is no substantive due process right under the Fourteenth Amendment to be free from malicious prosecution") (internal citation omitted).

The excessive force claim raised by plaintiff are appropriately controlled by the Fourth Amendment, not the Fourteenth or the Fifth Amendments. Accordingly, plaintiffs' section 1983 claims brought against defendants for deprivations of due process pursuant to the Fourteenth and Fifth Amendments are hereby **DISMISSED.**

The plaintiff's claim that he was subjected to excessive force by certain defendants is governed appropriately by the Fourth Amendment. The Fourth Amendment protects against unreasonable searches and seizures.[6] U.S. Const. Amend. IV ("[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by

_____

[6] Protection from unreasonable searches and seizures under the Fourth Amendment has been made applicable to the states by the Fourteenth Amendment. See Maryland v. Pringle, 540 U.S. 366 (2003).

oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized"). The right to be free from excessive force is clearly established. Landrigan v. City of Warwick, 628 F.2d 736, 741-42 (1st Cir. 1980) (citing United States v. Villarin Gerena, 553 F.2d 723, 724 (1st Cir. 1977).

To establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed a level of force that was unreasonable under the circumstances. Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007). Whether the force employed is reasonable "must be judged from the perspective of the reasonable officer on the scene." Graham v. Conner, 490 U.S. 386, 396 (1989). The inquiry into the reasonableness of the officer is an objective one, determined "in light of the facts and circumstances" faced by the officer "without regard to their underlying intent or motivation." Id. at 397.

The movants claim their actions were reasonable, given that they were responding quickly to a dangerous situation in which a shoot-out threatened lives. Indeed, police officers often "make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S.

at 396-97.  Nevertheless, the record before the Court shows a
cluster of disputed facts regarding happened during the particular
situation, whether the particular situation indeed demanded that
shots be fired, and whether the actions of the defendants was
reasonable in those circumstances.

          Feliciano's story is directly at odds with the story told
by Oquendo.  Feliciano claims Oquendo ran away while shooting at
Oquendo, while Oquendo claims he was running away as shots were
fired upon him.  Even taken on its own, Feliciano's story contains
logical gaps - how Oquendo managed to jump over a fence after
Feliciano shot him in the left leg is somewhat far-fetched.
Further, no other defendant officer's testimony confirms
Feliciano's version of events during the crucial moments when
Oquendo was injured.  It is the word of Feliciano against the word
of Oquenco regarding how and why Oquendo sustained his gun shot
wound.  The Court finds that, from the facts adduced, a reasonable
jury could find that Feliciano's actions were unwarranted.  The
appearing defendants' motion for summary judgment is therefore
**DENIED** as to the excessive force claim.

     **B.   Failure to Intervene**

          "An officer who is present at the scene and who fails to
take reasonable steps to protect the victim of another officer's

use of excessive force can be held liable under section 1983 for his nonfeasance." Davis v. Rennie, 264 F.3d 86, 98 (1st Cir. 2001) (internal quotations and citations omitted).  The appearing defendants argue that, because a shoot-out occurred during the execution of a warrant, there was a "chaotic circumstance" to which the officers on the scene responded reasonably.  (Docket No. 58 at 12.)  According to defendants, "Under such difficult, life or death situation [sic] in which shots were being fired in all directions, it is unrealistic to expect defendants' officers [sic] to intervene on a split second decision made by another officer who was repelling fire." Id.  Defendants also maintain that Bracero, Colon, Rivera, and Rodriguez did not have a realistic opportunity to intervene.

     For the same reasons explained above, the Court finds that a reasonable jury could infer from this record that the officers present at the scene on February 21, 2008, did in fact have time to intervene and could have intervened, but did not. Although Bracero claims he searched for cover upon hearing shots, and therefore was not in the premises of the house when the first shot was fired, none of the other defendant officers on the scene provided details as to their locations during the alleged shoot-out, the timing of the shots in comparison to their response to the

situation, or any other valuable information that might have shed light on why this shooting occurred, or whether the officers should have performed differently.  Instead, those officers provided statements in which they only explained that there was a shootout, and that they did not fire their weapons during that shootout. Again, a jury could find, from this record, that these officers should have intervened or acted differently to prevent Oquendo's injury.  The motion for summary judgment as to the failure to intervene claim is also **DENIED**.

### C. **Conspiracy to Violate Civil Rights**

At the outset, the Court notes its frustration with the poorly pled arguments made by all the parties regarding this claim. The plaintiff does not make clear, either in his amended complaint or in his reply to the summary judgment motion, whether he is bringing a conspiracy claim pursuant to 42 U.S.C. § 1983 or § 1985. And nowhere in any of the pleadings does any party guide the Court as to the standards governing the claim or any case law regarding conspiracy claims.  The Court will interpret Oquendo's claim as arising under § 1983 because the rest of his case arises under that statute, and because he does not allege discrimination as would be required under a § 1985 conspiracy claim, and it will research independently the standards and case law that applies to § 1983

conspiracy claims.   The parties should know, however, that competent litigating requires, at a minimum, properly guiding the deciding court as to the appropriate statutes and applicable legal standards connected to arguments presented - a failure to provide even these minimum components of legal analysis in these important pleadings indicates either a failure to draft the pleadings properly, or a lack of zealous advocacy as to the merits of the arguments made in the pleadings.

A section 1983 conspiracy claim is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008)(quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988).   A plaintiff must establish "not only a conspiratorial agreement but also an actual abridgment of some federally-secured right." Nieves v. McSweeny, 241 F.3d 46, 53 (1st Cir. 2001) (citing Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988). Further, the plaintiff must specify the specific constitutional right infringed. Id.

Oquendo alleges that the defendants conspired together to violate his civil rights.  (Docket No. 33 at 6.)  Specifically, Oquendo alleges that defendants Rodriguez, Bracero, and Colon failed to intercede in the shooting and unlawful assault of Oquendo, which "is tantamount to tacit authorization and approval of the unlawful excessive use of force."  Id.  Oquendo also alleges that the defendants "adhere to a code of silence whereby if asked about the incident the defendants will lie about what occurred," and that, under that code of silence, the defendants did not report the misconduct to any authority.  Id.  Based on these allegation, Oquendo claims that defendants Feliciano, Rodriguez, Rivera, Bracero, and Colon "shared the general conspiratorial objective which was to assault and batter [Oquendo]."  Id.

The movants argue that this claim should be dismissed because it is perfunctory and unsupported by "a single fact suggesting an agreement or conspiracy among appearing defendants." (Docket No. 58 at 12.)  Further, the movants argue that Oquendo's conspiracy's assertion is "generic" and fails to set forth "actual allegations" or "actual events" to support that assertion.  Id.

The Court agrees with the movants.  Oquendo's amended complaint does not explain how the appearing defendants acted "in concert" with each other or others, or undertook any kind of

intentional agreement to deprive Oquendo of his constitutional rights. Although the amended complaint alleges that the defendants failed to intervene to stop Feliciano's actions against Oquendo, violating Oquendo's due process rights, it states merely that the failure to intervene constituted "tacit authorization and approval" of that action, not that it constituted any kind of conspiratorial plot, or agreement as required to establish a conspiracy. The code of silence that Oquendo alludes to comes closer to the mark of showing a conspiracy. When given the opportunity to substantiate the conspiracy claim in the summary judgment stage, however, Oquendo fails to adduce any evidence regarding a "code of silence" whatsoever, not even evidence explaining what that code is, or how police officers in Puerto Rico might engage with such a code.

Although this Court believes such a code of silence could potentially be at play in the Puerto Rico Police Department, or any other law enforcement agency, it cannot infer from the facts on this record that any conspiracy occurred among these defendants to deprive this plaintiff of his constitutional rights. Oquendo has presented to no evidence, either direct or circumstantial, that supports his conspiracy claim. As such, no reasonable jury could infer that a conspiracy existed among the defendants to injure Oquendo. See Estate of Bennett, 548, F.3d 178 (even though

"conspiracy is a matter of inference, summary judgment may still be appropriate on a conspiracy claim where the nonmoving party rests merely on conclusory allegations") (internal quotation omitted). Accordingly, Oquendo's conspiracy claim is also **DISMISSED**.

### D.   Supervisory Liability

Under section 1983, a supervisory official may be held liable for his subordinates' behavior only if (1) his subordinates' behavior results in a constitutional violation; and (2) the official's action or inaction was affirmatively linked to that behavior such that "it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 902 (1st Cir. 1988)) (internal quotation marks omitted).

Supervisory liability may be found either where the supervisor directly participated in the unconstitutional conduct or where the supervisor's conduct amounts to "tacit authorization." See Camilo-Roble v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999). Plaintiffs must show that each individual defendant was involved personally in the deprivation of constitutional rights because no respondeat superior liability exists under section 1983. Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984).  A supervisor need

not have actual knowledge of the offending conduct to be liable; a
supervisor's behavior may be deemed liable "by formulating a
policy, or engaging in a custom, that leads to the challenged
occurrence." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576,
582 (1st Cir. 1994). Thus, a supervisor may be liable "for the
foreseeable consequences of such conduct if he would have known of
it but for his deliberate indifference or wilful blindness, and if
he has the power and authority to alleviate it." Id.

In his amended complaint, Oquendo claims that appearing
defendants Rivera and Rodriguez,[7] both of whom hold supervisory
positions in the Puerto Rico Police Department, failed to train,
instruct, supervise, control, and discipline police officers
adequately. (Docket No. 33 at 7.) Further, Oquendo claims that
the failures are "manifested" because the police department's
Internal Affairs Division does not properly categorize, record, or
investigate complaints about police conduct.

The appearing defendants argue that Oquendo has alleged
his claim of supervisory liability in a purely conclusory manner.
They argue that Oquendo has made claims in his amended complaint

---

[7] Oquendo also asserts his claim of supervisory liability
against defendant Pedro Toledo-Davila. Toledo-Davila did not join
the motion for summary judgment, however, and his liability is not
considered by the Court at this time.

that he does not substantiate at all, much less in any meaningful
way.  The Court again agrees with the appearing defendants; these
lofty and serious claims alleged by Oquendo in his amended
complaint seem to have been dropped altogether in his opposition to
the summary judgment motion.  He adduced no evidence whatsoever
related to these claims, either about policies, practices, customs,
training methodologies, complaint systems and oversight, or
anything else related to supervisory liability.  Oquendo's
uncontested facts have only to do with the shooting incident, and
refer not at all to the liability issues he claims pervert the
police department and make the appearing defendants liable.  As
such, the Court **DISMISSES** Oquendo's supervisory liability claim.

### III. Qualified Immunity

The defendants argue that defendant Feliciano is entitled to
qualified immunity.[8]  The qualified immunity doctrine protects
government officers and employees from suit on federal claims for
damages where, in the circumstances, a reasonable official could
have believed his conduct was lawful.  Olmeda v. Ortiz-Quiñones,
434 F.3d 62 (1st Cir. 2006); Rodriguez-Rodriguez v. Ortiz-Velez,

---

[8] The motion for summary judgement argues only that defendant
Feliciano is entitled to qualified immunity defense.  The Court
therefore addresses only whether Feliciano is entitled to qualified
immunity.

391 F.3d 36, 41 (1st Cir. 2004).  To determine whether a defendant
is entitled to qualified immunity, courts have typically followed
a two-pronged approach, deciding (1) whether the plaintiff has
alleged the deprivation of an actual constitutional right, and
(2) whether the right was clearly established at the time of the
alleged action or inaction.  In the First Circuit Court of Appeals,
the second prong has generally involved two aspects of further
inquiry regarding the clarity of the law at the time of the alleged
violation, and whether an objectively reasonable defendant would
have believed that the action taken violated that clearly
established constitutional right.   See id.; Vazquez-Valentin v.
Santiago-Diaz, 459 F.3d 144, 154, n.6 (1st Cir. 2006) (citing
Wilson v. City of Boston, 421 F.3d 45, 52-53 (1st Cir. 2005)).  The
First Circuit Court of Appeals has explained that "[t]he salient
question is whether the state of the law at the time of the alleged
violation gave the defendant fair warning that his particular
conduct was unconstitutional. Maldonado v. Fontanes, 568 F.3d 263,
269 (1st Cir. 2009) (citing Hope v. Peltzer, 536 U.S. 730, 741
(2002)).

     Recently, the First Circuit Court of Appeals' interpretation
of recent Supreme Court jurisprudence has clarified the method of
qualified immunity inquiry regarding the order and number of the

prongs.  "In administering the [Supreme] Court's test, this circuit
has tended to list separately the two sub-parts of the 'clearly
established' prong along with the first prong and, as a result, has
articulated the qualified immunity test as a three-part test."  Id.
(internal citations omitted).  "While the substance of our three-
part test has been faithful to the substance of the Court's two-
part test, we owe fidelity to the [Supreme] Court's articulation of
the test as well" - "And so we now adopt the [Supreme] Court's two-
part test and abandon our previous usage of a three step analysis."
Id. In Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808 (2009), the
Supreme Court reiterated that the qualified immunity analysis
requires a two-pronged test.  It held, however, that lower courts
need not address those prongs in any particular order even though
it may be sometimes be beneficial to do so.  See Maldonado v.
Fontanes, 568 F.3d at 270.

In this case, defendant Feliciano is not entitled to qualified
immunity.  Although defendants again maintain that Feliciano's
actions were reasonable given the circumstances, the record
governing this Court's findings casts those circumstances in doubt,
and therefore casts into doubt whether the officers on the scene
acted reasonably in those circumstances.  There is no doubt that if
Oquendo's version of events is credited by a jury - that Feliciano

shot at Oquendo unprovoked and for no cause - Feliciano's actions would constitute excessive force and thus violate Oquendo's Fourth Amendment rights.  See Burke v. Town of Wapole, 405 F.3d 66, 85 (1st Cir. 2005) (citing Aponte Matos v. Toledo-Davila, 135 F.3d 182, 185 (1st Cir. 1998)).  The Court finds that a reasonable official would not have believed that the acts committed by the Feliciano were lawful in light of clearly established law. Therefore, the defendants' request for qualified immunity is **DENIED**.

## IV.  **State Law Claims**

The summary judgment motion argues only that there are no actionable federal claims, and that therefore, the Court should exercise its discretion to decline exercising supplemental jurisdiction as to the state law claims.  No attention is paid to the merits of Oquendo's state tort claim.  With no argument upon which to base a decision, the motion for summary judgment as to the state tort claim is **DENIED**.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** defendants' motion for summary judgment.  As to Oquendo's section 1983 claims pursuant to the Fourth Amendment for Excessive Force and Failure to Intervene, the summary judgment motion is

**DENIED,** and those claims remain active.  Defendants' motion for summary judgment as to Oquendo's section 1983 conspiracy claim is **GRANTED,** and that conspiracy claims is accordingly **DISMISSED WITH PREJUDICE.**   Oquendo's supervisory liability claim against defendants Rivera and Rodriguez is also **DISMISSED WITH PREJUDICE.** Defendants' request to dismiss plaintiffs' state tort claim is **DENIED.**  All claims as to defendant Toledo-Davila remain, because he never joined the motion for summary judgment.

The motion to dismiss the amended complaint (Docket No. 34) is now **MOOT.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 7, 2010.


                                        s/ Francisco A. Besosa
                                        FRANCISCO A. BESOSA
                                        UNITED STATES DISTRICT JUDGE